LAKE SHORE STONE CO. *v.* WESTGATE.

1. APPEAL AND ERROR—REQUEST FOR DIRECTED VERDICT—SAVING QUESTION FOR REVIEW—ESTOPPEL.

Where counsel for both plaintiff and defendants asked for a directed verdict, and the judge's statement to the jury that they were agreed upon the record that there was nothing to submit to the jury was not questioned, and no request made for correction when settling bill of exceptions, defendants cannot question in this court the correctness of the trial judge's statement.

2. PUBLIC OFFICERS—LIABILITY FOR FAILURE TO REQUIRE STATUTORY BOND.

The individual members of a township board, who omitted to require of a contractor constructing a stone road the bond for protection of materialmen and others required by 3 Comp. Laws 1915, § 14827, are liable for material furnished the contractor for said road for which he failed to pay.

3. SAME—NOTICE—CREDIT TO MATERIALMAN.

If knowledge of plaintiff's salesman that no bond was given by the contractor is imputable to plaintiff, that fact is immaterial in the absence of evidence that after such knowledge or notice plaintiff furnished material to the contractor in reliance on his financial responsibility.

4. SAME—NO LEGAL REASON FOR NOT REQUIRING BOND—DEFENSES.

The conclusion of the trial judge that defendants had shown no legal reasons exculpating them from their failure to require the statutory bond, *held*, justified by the record.

5. SAME—LIABILITY OF MEMBER WHOSE TERM ENDED BEFORE MATERIAL FURNISHED.

The liability of one member of the board who participated in awarding the contract without requiring a bond, *held*, to be no less than that of the others, although his term of office expired and he retired from the board before any material was furnished under the contract.

On the question of personal liability of public officer for failure to take bond, or for taking insufficient bond, from contractor conditioned for payment of claims of subcontractors, materialmen, and laborers, see 49 L. R. A. (N. S.) 1199.

6. SAME—LIABILITY BASED ON TORT—COMBINING TWO DISTINCT ACTIONS AGAINST DIFFERENT DEFENDANTS.

> Where there were two separate contracts awarded at different times without requiring a bond in either case, the personnel of the board having changed in the meantime, plaintiff's contention that the unpaid balance on both contracts could be combined in one action against those members who participated in awarding the first contract, *held*, untenable, since the action is based upon two separate and distinct torts.

7. SAME—DISMISSAL AS TO ONE DEFENDANT—STATUTES.

> In view of 3 Comp. Laws 1915, § 12364, providing that new parties may be added, and that parties misjoined may be dropped, the trial judge was not in error in granting defendants' motion that the case be dismissed as to the one defendant who participated in awarding the first contract, but who was not a member of the board when the second contract was awarded; after dismissal of said defendant there remaining two compatible causes of action between the same plaintiff and defendants, joined in one, a practice expressly authorized by 3 Comp. Laws 1915, § 12309.

8. APPEAL AND ERROR—REQUEST FOR DIRECTED VERDICT—ESTOPPEL.

> Where plaintiff claimed in the court below that it was entitled to a judgment against all of the defendants, even though it appeared that the material was furnished under two contracts, and it not being conclusive that all material under the second contract was paid for, as plaintiff now contends, it cannot complain in this court of the action of the trial judge in disposing of the question, it having committed same to his determination by asking for a directed verdict.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted June 10, 1920. (Docket No. 40.) Decided September 30, 1920.

Case by the Lake Shore Stone Company against Orlo Westgate and others, members of the township board

of South Haven township, for an unpaid balance due from a contractor who had not given a statutory bond. Judgment for plaintiff on a directed verdict. Both parties bring error. Affirmed.

*Fred C. Cogshall* and *Thomas J. Cavanaugh*, for plaintiff.

*James E. Chandler* and *W. J. Barnard*, for defendants.

STEERE, J. This action was begun by declaration against the township of South Haven, Van Buren county, and the above named defendants who were its township board to recover an unpaid balance due for stone sold to contractors engaged in construction of highways in said township. Plaintiff's lengthy declaration contains three counts; the first alleges that on June 24, 1916, one Parr entered into a contract with said township for the construction of 2¾ miles of 16-foot stone road for $20,500, performance of which he entered upon but before completing it went into bankruptcy and his contract was taken over and completed by the Parr Construction Company with the consent of the township; that in addition to said contract Parr and his successor built 1,800 feet of another road for said township upon the same terms as in the written contract; that plaintiff furnished to said Parr and the Parr Construction Company all stone used on said roads, for which there remains an unpaid balance of over $4,000 which it is unable to collect from them. The second count is based on a claim for work and material furnished and done by Parr and the Parr Construction Company, at the township's request, which claim was assigned to plaintiff and covers the same road construction as in the first count. The third count relates more directly to the issues involved here and is directed against the named township offi-

cers, alleging that they as a township board entered into a written contract with Parr as set out in the first count, for the construction of 2¾ miles of road, and later entered into a further contract with him for the construction of 1,800 feet more of road upon the same terms; that after partial performance Parr became and was adjudged a bankrupt and the contracts, taken over by the Parr Construction Company with the consent of said township, were thereafter completed and accepted by the highway commissioner; that plaintiff furnished the contractors the stone they used in said work for which an unpaid balance remains due from them; that the four named defendants as members of said township board "carelessly and negligently failed and neglected to require the said S. L. Parr, contractor, and his successor the Parr Construction Company to furnish a bond" as required by statute, which neglect of duty by said township officers was unknown to plaintiff and it furnished the material in reliance upon said officers requiring such bond in performance of their duties; that said Parr and the Parr Construction Company are insolvent and uncollectible, wherefore by reason of such neglect and failure of the township officers to require a bond as provided by statute for its protection plaintiff claims damages against them in the sum of $5,000.

Defendants under a plea of the general issue gave notice of special defense, claiming that when the contract was let by the township board an agent and representative of plaintiff named Spies attended the board meeting in company with Parr, prepared his bid for him claiming that he was a reliable man and urging the township board to accept his bid, stating that in such case plaintiff would sell the necessary stone to Parr and thereby expedite the work; that after some negotiations Parr's bid was accepted and a suggestion made by one of the officers that he furnish a bond as

contractor was objected to by Spies, who contended that the same was unnecessary and need not be required because the township would under the contract retain 20 per cent. of the amount due thereon from time to time, while Spies as agent of plaintiff would be on the job looking after its interests and the town board need only look after payment of small bills; by reason of which representations defendants say they required no bond and plaintiff, at the insistence of whose agent they refrained from doing so, is therefore estopped from asking a judgment against them.

When the case was brought on for trial it was by agreement of court and counsel treated as and separated for trial into two actions. Plaintiff's claim against the township was first tried, resulting in a verdict and judgment for $616.51 in plaintiff's favor, being the amount of the contract price found retained by the township after completing the unfinished contracts.

The parties then proceeded to try the issue against the four defendants named herein, as members of the township board. At conclusion of proofs both parties moved the court for a directed verdict in their favor. After listening to the arguments of counsel the court directed a verdict in favor of plaintiff against defendants Westgate, Heald and Poorman for the sum of $3,434.68 and entered judgment, concluding as follows:

"On motion of James E. Chandler, attorney for said defendants, the dismissal of defendant C. Leisenring, one of the defendants, was ordered."

Both parties appealed by writs of error, plaintiff from that portion of the judgment dismissing the action as to defendant Leisenring, and defendants Westgate, Heald and Poorman from the judgment for damages against them.

Plaintiff assigns error on refusal of the court to hold alike liable all four members of the township board who participated in awarding and signed the contract of June 24, 1916, without requiring a bond as required by statute.

The points relied on for reversal by defendants are stated as follows:

"1. Error in the court's refusing to direct a verdict in favor of the defendants.

"2. Error in the court directing a verdict in favor of the plaintiff.

"3. Error in the court's refusing to submit the case to the jury."

Upon the last assignment of defendants, counsel are at variance as to whether it was agreed there was no question to be submitted to the jury. Defendants contend that Spies' authority as plaintiff's agent and its estoppel by what he did and said, if not conclusively shown as claimed, were at least made by the testimony questions of fact for the jury and say that although they asked a directed verdict, "nowhere in the record did defendants' counsel make a statement that there was no question of fact for the jury."

The record does show that both parties moved for and insisted upon a directed verdict. We do not find in the record that defendants' counsel made to the court any direct statement that there was a question of fact to submit to the jury, or claimed the right to go to the jury on any question of fact in the event of an adverse ruling on their motion for a directed verdict. In directing a verdict the court said to the jury:

"Both the counsel for plaintiff and defendant state upon the record that there is nothing to submit to the jury in this case. Upon this statement, no matter what may be the view of the court, the parties have affirmatively waived a submission of any question of fact to the jury."

211—Mich.—35.

And in concluding the charge the court again referred to the fact, saying:

"You have heard me, gentlemen, give my reasons for this. It is purely a proposition of law, and both have so conceded it."

The record does not show that these statements by the court were questioned by counsel at the time, or any request made to the court to correct them either then or when settling a bill of exceptions in the case. Under such circumstances defendants cannot question the correctness of the trial court's statement here.

The statute making it mandatory for the township board to require a bond when contracting for this road construction is as follows:

"When public buildings or other public works are about to be built, repaired or ornamented under contract at the expense of the State, or of any county, city, village, township or school district thereof, it shall be the duty of the board of officers or agents, contracting on behalf of the State, county, city, village, township or school district, to require sufficient security by bond for the payment by the contractor of all sub-contractors and for the payment for all labor performed and materials furnished in the erection, repairing or ornamenting of such building or works." 3 Comp. Laws 1915, § 14827.

It is undisputed that on June 24, 1916, these defendants constituted the township board of South Haven township. Westgate was supervisor, Poorman township clerk, Heald and Leisenring being the two justices of the township who by seniority were members of the board. On that day they met as a board, accepted Parr's bid and entered into a written contract with him to construct 2¾ miles of road for a consideration of $20,500 to be paid by their township, in total disregard of their plain statutory duty to require of him an adequate bond to pay for all labor performed and material furnished in its construction.

Their excuse for such palpable disregard of a plain official duty, given in a letter written by their clerk to plaintiff prior to commencement of this action, was:

"Our board required no bonds of S. L. Parr for the fact that we held back a percentage of the cost per mile till the road was inspected by State inspector and accepted.

"We have had our trouble with this contractor and are in hopes of coming out all right and hope you will the same.

"We cannot see how we are concerned about this statement of stone purchased by Mr. Parr and the balance left unpaid."

Their excuse since this action was brought is that plaintiff's agent, Spies, told them "it was not necessary to give a bond."

We need spend no time on the well-settled general rule that by failure to require a bond such officers make themselves liable to respond in damages to laborers and material men injured thereby. *Owen* v. *Hill,* 67 Mich. 43; *Plummer* v. *Kennedy,* 72 Mich. 295; *Wells* v. *Board of Education,* 78 Mich. 260; *Michaels* v. *McRoy,* 148 Mich. 577, 158 Mich. 605; *City of Alpena* v. *Surety Co.,* 158 Mich. 678.

When the township board met on July 24, 1916, to receive bids on this road work Parr was the only bidder and his bid was accepted. Its business was with him only. The Lake Shore Stone Company was not a bidder for the road work, nor was the township proposing to buy stone; they had no contract relations with each other, present or prospective. Plaintiff's sales agent, Spies, had no legitimate business to transact with the board for his principal. It was no concern of the township or defendants from whom or where Parr obtained the stone so long as it met the test imposed by State highway specifications, which the contract he bid on and was awarded required. Other concerns than plaintiff could have and had fur-

nished satisfactory stone for roads in that township. Spies' only excuse for being there was as an advocate for Parr to whom he hoped to sell some of plaintiff's stone if he secured the contract. When the contract was awarded to Parr, the township clerk called for a bond, as the law requires, and the supervisor said he thought they ought to go to an attorney who had been their adviser before, and have the contract drawn up. To this stage of the proceedings the board seems to have conducted its meeting legally, with an indicated understanding of the responsibility and duty of its members as officers of the township when transacting important public business; but, as they tell it, the stone agent, Spies, with whom they had no legitimate business, then "spoke up" or "jumped up," as they respectively stated it, and told them they did not need a bond, because they were "holding back 20 per cent.," nor a lawyer to draw up the contract, because "he had made lots of them" and could make Parr's out for them, which with their acquiescence he proceeded to do and thereafter, as their testimony indicates, took charge of the meeting, the clerk, however, taking the responsibility of making a copy of the contract Spies prepared so that it could be signed in duplicate and each party have one. Accepting Spies as their legal adviser they concluded that business of the board under his guidance, relying on his assurance, as they testified, that with him looking after the business no bond or attorney was necessary.

Soon after the contract was entered into and before any material was furnished under it Leisenring ceased to be a member of the board, by expiration of his term of office as justice on July 4, 1916. He was succeeded by a justice named Hoskins, not named as a defendant herein.

On September 12, 1916, the township board consisting of Westgate, Poorman, Heald and Hoskins let an oral

contract to Parr for construction of 1,800 feet additional road for a consideration of $2,400 without requiring any bond. The balance due plaintiff for stone furnished the contractors, less the amount of the judgment for $616.51 against the township, was found without apparent dispute to be $3,434.68, for which amount the court directed verdict and entered judgment against the three defendants who were members of the board during the letting of both contracts and furnishing stone therefor by plaintiff, releasing Leisenring from liability on the ground that no material was furnished by plaintiff while he was a member of the board, as stated in plaintiff's brief.

It is urged a verdict should have been directed in favor of defendants because plaintiff's agent Spies advised the board no bond was necessary; and knew from the beginning that none was required by the board or furnished by the contractor, which knowledge is imputable to plaintiff as his principal.

Spies, whose testimony is vacillating and in certain particulars self-contradictory, admitted he knew no bond was furnished by Parr, and had that knowledge from the beginning through all the time plaintiff was furnishing the stone; but denied that he advised the board no bond was necessary, and asserted "there was nothing mentioned about a bond." Accepting, however, defendants' contention that he did so advise the board, except as it may reflect on the credulity and intelligence if not good faith of the members, that fact is of little materiality. There is no evidence or presumption that to give legal advice, or any other, to a township board as to its rights and duties was within the scope of Spies' agency to sell stone for plaintiff. Plaintiff's general manager and treasurer denied that its officers had any knowledge of the fact that no bond was required by the board or given by the contractor until so advised by the township clerk after the mate-

rial was furnished, in reply to his letter giving notice of claim after the contractors proved otherwise uncollectible. But assuming that knowledge of Spies was imputable to his principal, the record contains no direct evidence, or imperative inference requiring the trial court to conclude as a matter of law that after such knowledge or notice plaintiff furnished stone to the contractors in reliance on their financial responsibility. In *Michaels* v. *McRoy*, 158 Mich. 605, it is said:

"Under our view of the case, it is of no consequence whether the plaintiffs knew, or did not know, that no statutory bond had been required, in the absence of testimony tending to show that the plaintiffs had furnished the material after such alleged notice, in reliance upon the financial responsibility of the contractors."

As an excuse for their delinquency, members of the board testify that they did not know of this statutory requirement. It is indicated they at least had sufficient knowledge on the subject to put them on inquiry, for the township clerk "spoke about giving a bond," but after listening to the unsolicited legal advice of the stone vendor, Spies, with whom they had no legitimate business to transact, township highway commissioner, Malbone, testified:

"They all took it for granted that there wasn't any need of giving any bond. The bond as near as we could figure out would cost probably a couple of hundred dollars. Spies said something about the cost."

We agree with the conclusion of the trial court that defendants have shown no legal reasons exculpating them from their admitted failure to require a bond in direct violation of the official duty imposed upon them by the plain provision of this mandatory statute. But as to the contract of April 24, 1916, in which he participated we see no legal distinction in point of liability

between Leisenring and the others with whom he acted as a member of the board, the wrong which created the liability and gave rise to plaintiff's claim for resulting damages was consummated when he with the other members, as a board, in disregard of the statute entered into and executed the contract for that public improvement at the township's expense without requiring a bond of the contractor.

Counsel for defendants point out that the verdict directed and judgment entered by the court against three of the four defendants was for the entire unpaid balance due on stone plaintiff furnished for the two separate contracts, entered into by two different town boards composed in part of different members, and contend:

"There is nothing in the record to show what part of the material went into the roads covered by the written contract of June 24, 1916, or that went into the road covered by the oral agreement of September 12, 1916,"—

and there was not only a misjoinder of actions but no proper proof of distinct damages as to either upon which to base a verdict.

Plaintiff's declaration, sounding in tort, charges the four named defendants as responsible under the two contracts for the entire unpaid balance. The case was tried by its counsel upon that theory. It was urged before the trial court that plaintiff having proved the entire unpaid balance there was, as the case then stood, "only one contract," and argued that if defendants claimed "any credit for the 1,800 feet it is for them to say what that credit should be, not for us." In their brief the theory is reiterated as follows:

"There was no change in the board so far as the rights of the parties under the facts in this case are involved. Poorman, Heald, Westgate and Leisenring were members of the town board on June 24, 1916. They all signed the contract in question. The giving

of the contract set the machinery in motion whereby the contractor, Parr, was enabled to secure from the plaintiff the stone to build the road."

We are cited to and can find no authority to sustain this theory. It is not tenable. The complex law of torts does not yield to solution of the complications developed in this case on any theory of overlapping liability as to a defendant not participating in both torts. Plaintiff in its declaration has combined two separate and distinct torts, committed at different times by different township boards differently constituted. No one member of either of these boards could separately do plaintiff the injury charged, nor be held as a joint tort feasor in the unlawful action of the board of which he was not a member. It would be as logical to hold Hoskins liable for the consequence of failure by the first board, of which he was not a member, to require a bond when making the contract of June 24, 1916, as to hold Leisenring for the delinquency of the second board, of which he was not a member when it let the contract of September 12, 1916, without requiring a bond.

It is an elementary rule in that branch of the law that a tort gives rise to a several liability as to each one participating in it. The plaintiff, if he so desires, may sue one or more of joint tort feasors without impleading all. As to the first tort charged plaintiff impleaded all members of the board participating. In the second, Hoskins was omitted. The burden of proof rested upon plaintiff to prove the tort or torts charged against each defendant charged. Counsel introduced plaintiff's evidence on the theory that "there was no change in the board so far as the rights of the parties under the facts in this case are involved," and contended that if defendants claimed "there should be any credit for the 1,800 feet" it was for them to prove it. At conclusion of the proofs defendants' counsel

moved, amongst other things, that Leisenring "be dismissed as one of the defendants." While plaintiff's counsel state in their brief that this was granted on the theory that Leisenring was not liable, "since no work had been performed upon the highway during the time he was in office," we do not find in the record that defendants' counsel admit this reason was given by the court, or that the court so stated. The only authoritative statement by the court we discover upon that subject was directed to the jury. Referring to this motion as previously made and not then granted, the court said:

"But I think at this time on the record that, in view of the facts here, that the court will now grant that motion and the defendant Leisenring is no longer considered as one of the defendants in this case."

But the important question here is the validity of what the court did. Under the judicature act (3 Comp. Laws 1915, § 12364) it is provided:

"No action at law or in equity shall be defeated by the non-joinder or mis-joinder of parties. New parties may be added and parties mis-joined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require."

Leisenring was dropped by order of the court and the case proceeded to judgment on a directed verdict against the remaining defendants who as members had participated in both board meetings which let the two contracts without requiring bonds, in violation of the statute. As to them there remained two compatible causes of action between the same plaintiff and defendants joined in one, the liability being asserted and equally shown "against all the material defendants," a practice expressly authorized by the judicature act in such cases. 3 Comp. Laws 1915, § 12309. *Vide Otto* v. *Village of Highland Park*, 204 Mich. 74.

As to the error assigned by plaintiff against the

court dropping Leisenring from the case, it is now claimed there is proof that all the unpaid balance was for material used in performance of the contract of June 24, 1916, in letting which he participated.

No claim is made that any witness in this case testified as to where or when or in which contract the stone for which an unpaid balance remains was used, but quoting the testimony of Township Clerk Poorman that "Parr began first on the Bangor road. The south mile was finished first and the 1,800 feet was completed the first of October, I think," and referring to the dates of invoices of stone set out in an account rendered by plaintiff to the Parr Construction Company on June 1, 1917, counsel argue that stone furnished for the second contract must have been all paid for first because that contract was first finished, and therefore the unpaid balance was for material used upon the contract of June 24, 1916, which was not entirely completed until the next year.

Plaintiff's position before the trial court was that having shown the unpaid balance on all stone furnished for that road work it was entitled to a judgment against all four defendants, although it appeared that the stone was furnished under two contracts; that it was not for the plaintiff "to separate, but for defendants to show the 1,800 feet was not paid for." etc.

If the incidental, collateral circumstances counsel rely on to show full payment for stone furnished under the second contract carry beyond the field of mere conjecture to permissible inferential evidence, it falls far short of being conclusive of the fact as a matter of law, and, as in the case of defendants, by moving for a directed verdict without reservation plaintiff committed determination of that claimed inference to the trial court, whose conclusions in that particular this court will not disturb.

For the reasons above stated we find, as the record of the case comes to this court, no prejudicial error demanding reversal, and the judgment will stand affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.